## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| JEROME EDWARD COTTINGHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Action No. 2:17cv611 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Jerome Edward Cottingham's ("Plaintiff")

Complaint, ECF No. 1, filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final

decision of the Defendant Nancy A. Berryhill, the Acting Commissioner of the Social Security

Administration ("the Commissioner"), denying Plaintiff's claim for Supplemental Security

Disability Income ("SSDI") under the Social Security Act ("SSA").  Plaintiff filed a Motion for

Summary Judgment and memorandum in support, ECF Nos. 9-10, and the Commissioner filed a

cross-Motion for Summary Judgment and Memorandum in Support, ECF Nos. 11-12, which are

now ready for recommended disposition.  This action was referred to the undersigned United

States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal

Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2,

2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges.

After reviewing the briefs, the undersigned makes this recommendation without a hearing

pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J).  For the following

reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 9, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 11, be **GRANTED**, and the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

On April 5, 2016, Plaintiff protectively filed his application for SSDI, alleging disability due to PTSD, depressive disorder, adjustment disorder, obesity, degenerative joint disease, osteoarthritis, and sleep apnea, with an onset date of February 25, 2016, which Plaintiff later amended to June 6, 2016. R. at 15, 17, 197.[1] His application was initially denied on October 18, 2016, and again denied upon reconsideration on December 21, 2016. R. at 15. Plaintiff then requested a hearing in front of an administrative law judge, which was conducted on May 10, 2017. R. at 17. The Administrative Law Judge Jeffrey M. Jordan ("the ALJ"), issued a decision denying Plaintiff's SSDI application on June 7, 2017. R. at 12-14. Plaintiff then filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied by the Appeals Council on September 23, 2017. R. at 1-5. The Appeals Council denied Plaintiff's request for review because Plaintiff's reasons for disagreeing with the ALJ's decision did not provide a basis for changing the ALJ's decision, making the ALJ's decision the Commissioner's final decision. R. at 1.

Having exhausted his administrative remedies, on November 26, 2017, Plaintiff filed the instant Complaint for judicial review of the Commissioner's decision. ECF No. 1. The Commissioner filed an Answer on February 13, 2018. ECF No. 5. The matter was referred to the undersigned U.S. Magistrate Judge ("the undersigned") on February 14, 2018. ECF No. 7.

---

[1] "R." refers to the certified administrative record that was filed under seal on February 13, 2018, ECF No. 6, pursuant to Local Civil Rules 5(B) and 7(C)(1).

Plaintiff filed his Motion for Summary Judgment and Memorandum in Support on March 22, 2018, ECF Nos. 9-10, and the Commissioner filed a cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment and a Memorandum in Support on April 19, 2018, ECF Nos. 11-12. The matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff alleged his disability onset date was February 25, 2016, but later amended this date to June 6, 2016.[2] R. at 15, 197, 253. Plaintiff was born on April 19, 1996, and was forty-seven years old at the time of his original alleged disability onset date,[3] making him a "younger individual" under the SSA's regulations. *See* R. at 24. *See also* 20 C.F.R. § 416.963(c) (defining anyone under the age of fifty as a "younger person."). On May 10, 2017, Plaintiff appeared, represented by counsel Robert Gillikin, and testified before the ALJ at the administrative hearing. R. at 30, 34-47. Fred Monaco, an impartial vocational expert ("VE") also appeared and testified. R. at 30, 47-53. The record included the following factual background for the ALJ to review:

Plaintiff graduated from high school and has completed two years of college. R. at 203. Plaintiff testified that he lived with his wife and two children, ages sixteen and eighteen, although he said his older child was in college. R. at 34. Plaintiff indicated that he was honorably discharged from the Coast Guard after twenty-five years of service and thereafter worked for a bus company as a supervisor for several months before being fired because he was making mistakes and was getting frustrated because of mental issues. R. at 35-36. He did not apply for unemployment benefits thereafter as a result of his alleged mental issues. R. at 36-37. He lived off his retirement income and income from small jobs that his wife performed. R. at 37.

---

[2] Counsel states that the reason for a change to the alleged onset date to June 6, 2016, is because this is the effective date of his 70% VA disability rating for PTSD, giving rise to his 100% overall disability rating. R. at 253.

[3] Petitioner was forty-eight years old at the time of his amended onset date. R. at 197.

Plaintiff indicated that the Veteran's Administration ("VA") found that he was entitled to a 100% disability rating, with a 70% rating for PTSD. R. at 37. Physically, Plaintiff stated he has heart problems, asthma, and arthritis in his knees, feet, and hands. R. at 38. Mentally, Plaintiff alleges PTSD, depressive disorder, and adjustment disorder. R. at 15.

Related to his alleged mental impairments, Plaintiff claimed he has a lot of flash backs, nightmares, and mood swings, for which he is on medication. R. at 37-38, 389. Plaintiff receives individual psychotherapy from Emily R. McGrath, LCSW, and also attends group therapy with Ms. McGrath. R. at 346, 358, 362-66, 377-79, 383-85, 387-88, 393-96. Plaintiff receives medication management from and Nurse Cheryl Major-Cooper and psychiatrist Dr. Barin Vyas, M.D. R. at 38-39, 358-61, 366-68, 388, 558-60, 689, 693-96, 713-16. Plaintiff has also been evaluated by psychologist Curtis K. Greaves. R. at 333-46, 496-519.

On June 7, 2016, the day after his alleged onset date, Plaintiff attended an individual therapy session with Ms. McGrath who found Plaintiff unchanged from her previous treatment with him, finding him alert/oriented, cooperative, comfortably dressed, and anxious congruent to affect, he had goal-directed thoughts, and good insight and judgment. R. at 388. Only July 1, 2016, He had another therapy session with Ms. McGrath, who again observed he was alert/oriented, cooperative, comfortably dressed, and anxious congruent to affect, he had goal-directed thoughts, and good insight and judgment. R. at 385. Plaintiff also attended group therapy on July 7, 2016, and July 21, 2016, in which Ms. McGrath observed he was active, attentive, engaged. R. at 378, 384. On both those days he was alert and oriented, his mood was anxious congruent to affect, and his thoughts were directed and relative at both group sessions. R. at 377-78, 383-84. On July 22, 2016, Plaintiff attended an individual session with Ms. McGrath where he discussed experiencing anxiety during family outings and upcoming travel

4

plans to bring his daughter to college. R. at 377. Ms. McGrath again observed Plaintiff was cooperative, comfortably dressed, and anxious congruent to affect, he had goal-directed thoughts, no perceptual disturbance elicited, and good insight and judgment. R. at 377.

On July 25, 2016, Plaintiff saw Nurse Major-Cooper for medication management, at which time he stated he stopped taking his medications because they were not working, but he was not experiencing any side effects of medications. R. at 366. Plaintiff stated he was sleeping about 3-4 hours of interrupted sleep per night, had nightmares, and was experiencing intrusive thoughts and had flashbacks about three to four times per week. R. at 366. He was very interactive, neatly dressed, made good eye contact, had a euthymic/anxious/depressed mood and flat/normal affect, was able to verbalize feelings, had fair concentration, no memory problems, and his thoughts were logical and goal-directed. R. at 367. Plaintiff's medication was increased and he was encouraged to continue therapy. R. at 367-68.

On July 28, 2016, Plaintiff attended a group therapy session with Ms. McGrath during which he was active, attentive, engaged, alert and oriented, with anxious mood congruent to affect, and his thoughts were direct and relative. R. at 365-66. On July 29, 2018, Plaintiff had an individual therapy session with Ms. McGrath where he was alert/oriented, cooperative, comfortably dressed; had was dysthymic congruent to affect, had goal-directed thoughts, and good insight/judgment. R. at 365. Plaintiff discussed going to the movies, attending school band activities for his son, and taking his son to breakfast. R. at 364. He indicated he experienced anxiety during these outings and continued to have nightmares, but these nightmares were becoming less frequent due to sleep skill implementation and medication. R. at 364. He also discussed an upcoming trip to bring his oldest child to college in the fall. R. at 365. He again saw Ms. McGrath for group therapy on August 4, 2016, at which time he was active, attentive,

and engaged in group discussion. R. at 364. Plaintiff was alert and oriented, his mood with euthymic congruent to affect, and his thoughts were directed and relative. R. at 364. The following day, on August 5, 2018, Plaintiff attended individual therapy with Ms. McGrath, at which time Plaintiff was alert/oriented, cooperative, comfortably dressed, depressed congruent to affect, tearful at times; and he had goal-directed thoughts and good insight/judgment. R. at 362-363. Plaintiff told Ms. McGrath that his nephew died two days prior resulting from a gunshot wound to the head. R. at 362. He stated he planned to spend time with his immediate family, go out for a meal, and team with his wife to process the loss of her brother's son. R. at 363.

On September 28, 2016, Plaintiff went to a medication management appointment with Nurse Major-Cooper. R. at 358. Plaintiff stated that he was taking his medications as prescribed, that the medications were working, and he was experiencing no side effects. R. at 359. He stated that August was rough for him; his nephew died, his aunt passed, and his aunt's son committed suicide the Friday before her funeral. R. at 359. He stated the nightmares were worse in August but had since gotten better. R. at 359. Plaintiff also discussed taking his daughter to Florida to start college and how volunteering with his son's high school band program was helping him. R. at 359. On examination, Plaintiff was interactive, neatly dressed, made good eye contact, had a euthymic/irritable/depressed mood and flat affect, normal speed, fair attention and concentration, no memory problems, and logical and goal-directed thoughts. R. at 359-60. Plaintiff was directed to continue medication as prescribed and continue therapy. R. at 359-61.

On October 12, 2016, psychologist Jeannie Berger, Ph.D., a state-agency expert, reviewed Plaintiff's records and opined that Plaintiff experienced mild restrictions in his daily living activities; mild difficulty maintaining social functioning; and mild difficulty maintaining

concentration, persistence, and pace.  R. at 60.  She also opined that Plaintiff had only mild functional limitations resulting from his mental impairments.  R. at 60.

On November 10, 2016, Plaintiff was evaluated by psychologist Curtis K. Greaves.  R. at 333.  Plaintiff stated he had a low interest in attending social outings with his spouse and low interest in maintaining relationships with friends and extended family.  R. at 335-37. Plaintiff stated he experiences hypervigilance when in large crowds, stayed  at social gatherings only briefly, and did not participate in many social gatherings away from his home.  R. at 335-37. Plaintiff stated his wife and children would attend social outings without him, even though they prefer he attend events with them.  R. at 336.  Plaintiff stated he had difficulty completing tasks his spouse expected him to complete and had low motivation for such tasks.  R. at 335.  Plaintiff indicated he was getting five to five and a half hours of sleep each night.  R. at 340.  On examination, Plaintiff was fully alert, oriented, pleasant, cooperative, exhibited appropriate behavior, and had an anxious/depressed/irritable mood and anxious/sad/irritable affect.   R. at 340, 344.

On December 21, 2016, psychiatrist Howard S. Leizer, M.D., a state-agency expert, reviewed Plaintiff's records and opined that Plaintiff experienced mild restrictions in daily living activities; moderate difficulty maintaining social functioning; and mild difficulty maintaining concentration, persistence, and pace.  R. at 73.

On March 8, 2017, Plaintiff returned to Nurse Major-Cooper with complaints of 3-4 hours of sleep per night and continuing flashbacks, but stated he stayed busy with his son's band. R. at 698, 694.  Nurse Major-Cooper observed Plaintiff was interactive, neatly dressed, made good eye contact, had euthymic mood/irritable/depressed and flat/normal affect, normal speech,

fair attention and concentration, no memory problems, and logical and goal-directed thoughts. R. at 694-96.  Plaintiff was prescribed medication and told to continue therapy.  R. at 696.

On March 16, 2017, Nurse Major-Cooper and Dr. Vyas, M.D., completed a Mental RFC and opined that Plaintiff had moderate limitations in understanding and memory; marked limitations to sustained concentration and persistence, social interaction, and adaption.  R. at 713-14.  Nurse Major-Cooper and Dr. Vyas drafted a letter the same day that indicated Plaintiff had diagnosed PTSD with a fair prognosis, was prone to social isolation and mood disturbance, and stated Plaintiff would likely have problems maintaining relationships with co-workers and supervisors.  R. at 716.  The letter stated problems with memory and/or concentration could cause issues with completing work on time or fully understanding tasks.  R. at 716.  They opined Plaintiff's insomnia could cause him to be overtired, could cause decreased ability to perform, and could cause Plaintiff to miss work.  R. at 716.  They concluded that it was unlikely Plaintiff could maintain employment of any type.  R. at 716.

At the May 10, 2017 hearing Plaintiff stated he has overwhelming flashbacks approximately three days a week and it can sometimes take him five hours to recover.  R. at 42. Plaintiff indicated his mental issues cause him to avoid social interactions, he has not visited his siblings in a long time, and he does much less with his children than he used to.  R. at 43. Plaintiff stated he has lost interest in a lot of things, avoids crowds, and tries to isolate himself. R. at 43.  Plaintiff stated his son plays in a high school band but he does not go to his son's performances.  R. at 45.  Plaintiff indicated he grocery shops about once a month, but only in the mornings when there are few people.  R. at 44.  Plaintiff stated he tries not to drive, but he did drive himself to the hearing.  R. at 43-44.  Plaintiff indicated that therapy has helped him cope

8

with his anger and nightmares.  R. at 46.  Plaintiff stated he had not eaten out in about six months. R. at 47.

The VE was presented with a total of two hypothetical scenarios by the ALJ.  The first hypothetical presented asked the VE to assume an individual of Plaintiff's age, education, and work history, limited to light work and simple, routine, and low-stress tasks; who avoided climbing ladders, ropes and scaffolds, kneeling and crawling, with other postural movements occasionally, avoided fast pace tasks, working around crowded conditions, hazards, and concentrated exposure to respiratory irritants, extreme temperature, and humidity, with only brief and superficial interactions with the public, co-workers, and supervisors.  R. at 48.  The VE testified that such an individual could not perform Plaintiff's past work, but could perform work as laundry folder, photocopy machine operator, and garment sorter; available sedentary jobs would include document preparer, hand packers, and surveillance system monitor. R. at 49.  For the second hypothetical, the VE testified that, assuming the same hypothetical individual, but with limitations to walking no longer than twenty minutes and sitting no longer than sixty minutes, there would be no jobs available.  R. at 50.  Responding to Plaintiff's counsel, the VE stated that, if the first hypothetical individual had to take an unscheduled break three days a week for an hour or more, no jobs would be available.  R. at 50-51.

### III.  THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits.  20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001).  The ALJ conducts a five-step sequential analysis for the Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the

9

Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-00357, 2011 WL 2938084, at \*3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity). "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at \*10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law: First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 6, 2016. R. at 17. Second, the ALJ determined that Plaintiff suffered from the following severe impairments: post-traumatic stress disorder ("PTSD"), depressive disorder, adjustment disorder, obesity, degenerative joint disease, osteoarthritis and allied disorders, and obstructive sleep apnea. R. at 17. The aforementioned impairments were found to be severe as they significantly limited Plaintiff's ability to perform basic work-related activities. R. at 17. To the extent that Plaintiff alleged other impairments, including: migraines, flat feet, tinnitus, hypertension, back strain, and hiatal hernia, the ALJ found such impairments to be non-severe

10

because they either did not exist for a continuous period of twelve months, were responsive to medication, did not did require any significant medical treatment, or did not result in any continuous exertional or nonexertional functional limitations.  R. at 17-18.  With respect to Plaintiff's medically determinable physical impairments of degenerative joint disease, sleep related breathing disorders, and obesity, the ALJ found that when considered singly and/or in combination, these did not meet or medically equal the criteria of any impairment listed.  R. at 18.  With respect to Plaintiff's medically determinable mental impairments, the ALJ found that when considered singly and/or in combination, these did not meet or medically equal the criteria of Listings 12.04 or 12.15.  Specifically, the ALJ found that none of Plaintiff's mental limitations satisfied "paragraph B" criteria because Plaintiff suffered only mild limitations to understanding, remembering, or applying information; moderate limitations interacting with others; moderate limitations to concentration, persistence, or pace; and moderate limitations to adapting and self-management.  R. at 19.  The ALJ also considered whether "paragraph C" criteria were satisfied and determined that the record does not support that Plaintiff has only marginal adjustment.  R. at 19.

Third, the ALJ noted that no state agency psychological consultant concluded that a mental listing was medically equaled.  R. at 20.  The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined by the SSA regulations, with the added limitations that Plaintiff avoid crawling, kneeling and climbing ladders, ropes, and scaffolds, but could perform other postural movements on an occasional basis, Plaintiff be limited to simple, routine, and low stress tasks with low stress defined as requiring work with minimal changes in the routine and work that allows him to avoid fast-paced tasks such as assembly line jobs involving production quotas, and that Plaintiff be limited to occasional brief

11

and superficial interaction with the public, co-workers, and supervisors; and Plaintiff not work around hazards such as moving dangerous machinery and unprotected heights, and not have concentrated exposure to respiratory irritants, extreme temperatures, or humidity.  R. at 20.

While the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged by Plaintiff, the ALJ found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  R. at 21.  The ALJ noted that the severity of symptoms alleged by Plaintiff was not supported by the evidence of record, and that his treatment had been essentially routine and/or conservative in nature.  R. at 21.  The ALJ also noted that Plaintiff's reportedly limited daily activities are outweighed by other factors, for instance, although Plaintiff reported very few activities of daily living, progress notes indicate volunteer work with his son's high school band program, which helped him, and statements that he stayed busy with his children and their activities.  R. at 22-23.

The ALJ gave little weight to treating sources Nurse Cheryl Major-Cooper and Dr. Barin Vyas, M.D., who opined Plaintiff had marked limitations related to Plaintiff's mental impairments, because "their assessments are not supported by their own progress notes" or other evidence of record.  R. at 23.  The ALJ gave significant weight to Plaintiff's VA disability ratings but stated that the VA progress notes, findings, and other treatment records did not establish more than mild to moderate limitations in understanding, remembering, interacting, concentrating, persisting, maintaining pace, adapting, and managing himself.  R. at 24.

Fourth, the ALJ determined that in light of his RFC for light exertional work, Plaintiff was unable to perform past relevant work, which is classified as complex medium work. R. at 24.

Finally, the ALJ found that work existed in significant numbers in the national economy for Plaintiff based on his age, education, work experience, and residual functional capacity, including positions such as laundry folder, photocopy machine operator, and garment sorter, as well as sedentary unskilled jobs such as document preparer and hand packer. R. at 25.

### IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial

evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

### A. The ALJ did not Err by Giving Little Weight to the Opinions of Nurse Major-Cooper and Dr. Brian Vyas.

Plaintiff argues that the medical opinions of Nurse Major-Cooper and Dr. Vyas are entitled to greater weight than what was afforded them by the ALJ. ECF No. 10 at 6. Plaintiff states that Dr. Vyas is a psychiatrist and Nurse Major-Cooper is a mental health clinician that has been providing Mr. Cottingham with psychiatric treatment since 2016. ECF No. 10 at 8. Plaintiff argues that their clinical records are well-detailed and confirm numerous symptoms that consistent with their conclusions that Plaintiff cannot handle full-time work due to his severe mental impairments. *Id.*

Under the "treating physician rule," the opinion of a claimant's treating physician should be given controlling weight and may be disregarded "only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *see also* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). If any of the evidence is inconsistent, the ALJ must decide which evidence should receive controlling weight. 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d). The regulations do not require that an ALJ accept opinions from a treating physician in every situation, for example, when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Acting

14

Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well-supported. *Jarrells v. Barnhart*, No. 7:04–CV–411, 2005 U.S. Dist. LEXIS 7459, at *9-10 (W.D. Va. Apr. 26, 2005). The ALJ must articulate the reasons for the weight given to the treating source's medical opinions, 20 C.F.R. § 404.1527(d)(2), and specific supporting evidence must be cited so that a reviewing court can discern the basis for the decision, *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 519 (D. Md. 2002); *see also Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Pursuant to 20 C.F.R. § 404.1527(c), unless a treating physician's medical opinion is afforded controlling weight, the ALJ must consider the following non-exhaustive factors in deciding the weight given to any medical opinion, including whether: (1) the physician has examined the claimant; (2) the physician has treated the claimant, and the nature, extent, and length of the treatment relationship; (3) the medical opinion is supported by relevant evidence, particularly medical signs and laboratory findings; (4) the opinion is consistent with the record as a whole; (5) the treating physician is a specialist in the field of which he is opining; and (6) other factors. 20 C.F.R. § 404.1527(c)(1)-(6).[4] The ALJ is also required to articulate the reasons for the weight given to a treating source's medical opinions. *Id.* § 404.1527(d)(2).

Here, there is substantial evidence in the record to support the ALJ's decision to give "little weight" to the March 16, 2017 opinions of Nurse Major-Cooper and Dr. Vyas because those opinions are inconsistent with their own progress notes and inconsistent with other evidence of record. *See* R. at 23, 713-16. As an initial matter, Plaintiff appears to argue that the ALJ wholly rejected the opinions of Dr. Vyas and Nurse Major-Cooper, when in fact the ALJ did not reject these opinions or give them no weight, rather the ALJ afforded their opinions "little

---

[4] The same factors and considerations in evaluating medical opinion evidence apply equally to a Plaintiff's DBI and SSI claims. *See* 20 C.F.R. §§ 404. 1527(c)(1)-(6); *see also* 20 C.F.R. §§ 416.927(c)(1)-(6).

weight." R. at 23. Secondarily, the ALJ is not required to accept the opinion of a treating physician where the treater opines on the issue of whether the claimant is disabled for purposes of employment, which is an issue reserved for the Acting Commissioner. 20 C.F.R. § 404.1527(d); *Jarrells*, 2005 U.S. Dist. LEXIS 7459, at \*9-10. Therefore, the ALJ can discount the opinions of Nurse Major-Cooper and Dr. Vyas that "it is highly unlikely that [Plaintiff] will be able to maintain employment of any type" because this opinion is reserved to the Commissioner. R at 716.

Reviewing the ALJ's decision to afford "little weight" to the opinions of Dr. Vyas and Nurse Major-Cooper because their opinions are unsupported by their own treatment records, the Court notes there are only three sets of progress notes during the relevant period, first from July 25, 2016, R. at 366-68, second from September 28, 2016, R. at 358-61, and third from March 8, 2017, R. at 694-98. There are no treatment notes in the record from Dr. Vyas himself, and all treatment records relevant to Plaintiff's psychiatric medication appear to have been authored by Nurse Major-Cooper. *See* R. at 366-68, 358-61, 694-68. While the ALJ attributes these notes to Dr. Vyas as well, the records are unclear as to Dr. Vyas' role in treating the Plaintiff. *Id.* Moreover, because Nurse Major-Cooper is not a physician, her opinion is not entitled to controlling weight that is typically presumed for treating physicians. Rather, her opinion is entitled to weight consistent with a treating source, to the extent that opinion is consistent with the evidence of record.

Substantial evidence supports the ALJ's decision to afford "little weight" to the opinions of Nurse Major-Cooper and Dr. Vyas. R. at 23, 713-16. As discussed by the ALJ in his decision and as the Commissioner noted, the opinions of Nurse Major-Cooper and Dr. Vyas indicate markedly limited ability to maintain attention and concentration and problems with memory and

concentration, R. at 713, 716.  This is inconsistent with their own treatment notes which reflect "fair attention and concentration" and "no memory problems."  R. at 367, 359-60, 694-96; *see also* R. at 23, ECF No. 12 at 15.  This is also inconsistent with Plaintiff's statement that he drove himself to the hearing, which indicates an ability to sustain concentration for periods, which is inconsistent with marked limitation.  R. at 44.  Similarly, these opinions state that Plaintiff "rarely engages in activities such as hobbies, family gatherings, outings, and social gatherings, etc.," R. at 716, however as the ALJ identifies, this appears inconsistent with Nurse Major-Cooper's treatment notes in which Plaintiff discussed going to the movies, attending school band activities for his son, volunteering with his son's high school band program, taking his son to breakfast, and traveling to take his daughter to college.  R. at 23, 364-65, 359.  The Court agrees with Defendant that these treatment notes constitute substantial evidence to support the ALJ's decision to afford little weight to the opinion of Nurse Major-Cooper and Dr. Vyas, because these opinions are undermined by their own treatment records and Plaintiff's testimony.  *Jacobs v. Berryhill*, No. 2:16cv677, 2018 U.S. Dist. LEXIS 16997, at *12 (E.D. Va. Jan. 31, 2018) ("affording a treating physician's opinion no weight should be upheld as long as substantial evidence supports the decision").  Therefore, the undersigned **FINDS** that the ALJ properly discounted the opinions of Nurse Major-Cooper and Dr. Vyas, even giving Dr. Vyas the benefit of treating physician status, because his opinion and the opinion of Nurse Major-Cooper were plainly contradicted by substantial evidence of record.

**B. The ALJ's Assessment of Plaintiff's RFC is Not Lacking Under *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015).**

Plaintiff argues that the ALJ's RFC did not sufficiently address Plaintiff's ability to sustain concentration, persistence, and pace because the ALJ did not consider Plaintiff's ability

to stay on-task as it relates to his mental health limitations.  ECF No. 10 at 9-10.  Plaintiff argues that the RFC is insufficiently specific and tailored such that it does not accurately reflect all of Plaintiff's reasonably supported mental impairments, because it limits Plaintiff only to simple routine tasks at a slow, non-assembly-line pace.  *Id.* at 10.  The Commissioner argues that the instant case is distinguishable from *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), because the ALJ did not merely limit Plaintiff to simple routine tasks or unskilled work, but more specifically tailored the RFC to account for Plaintiff's supported psychological limitations.  ECF No. 12 at 16-17.

*Mascio* addresses the appropriate handling of a limitation as it relates to concentration, persistence, or pace.  *See generally*, 780 F.3d 632.  The *Mascio* Court held that an ALJ "does not account 'for [the limitation] by restricting the hypothetical question to simple, routine tasks or unskilled work.'"  *Id.* at 638 (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011); *see also White v. Colvin*, 1:14-CV-161, 2016 U.S. Dist. LEXIS 53532, at *6 (W.D.N.C. Apr. 21, 2016) (extending *Mascio* to disallow the ALJ's "restricting the RFC or the hypothetical question . . . to simple, routine, or repetitive tasks").  Specifically, *Mascio* held "the ability to perform simple tasks differs from the ability to stay on task.  Only the latter limitation would account for a claimant's limitation in concentration, persistence, and pace."  *Mascio*, 780 F.3d at 638.  Where an RFC omits concentration, persistence, and pace limitations the ALJ, to avoid remand, must explain why the established limitation does not require a corresponding limitation in the RFC.  *Id.* at 637-38; *see also Baez v. Colvin*, No. 2:14cv628, 2015 U.S. Dist. LEXIS 173888, at *18 (E.D. Va. Dec. 7, 2015) (explaining "remand is not appropriate unless the ALJ did not provide an explanation as to why such an inquiry [about the plaintiff's ability to stay on task] was not included").  Thus, if an ALJ finds that the limitation does not affect a plaintiff's

ability to work, hypotheticals posed to the VE need not include concentration, persistence, or pace limitations either. *Mascio*, 780 F.3d at 638. An ALJ may also satisfy *Mascio* by restricting a plaintiff to "nonproduction work, which appropriately accounts for the plaintiff's inability to concentrate or stay on task. *Baker v. Colvin*, No. 3:15-cv-00637, 2016 U.S. Dist. LEXIS 84460, at *3 (E.D. Va. June 7, 2016).

The RFC in Plaintiff's case complies with *Mascio* because the ALJ articulated specific restrictions that account for Plaintiff's mental impairments that affect his concentration, persistence, and pace, and allowed Plaintiff to avoid stressful situations that could negatively affect or exacerbate the symptoms of his mental impairments. While the ALJ found that Plaintiff suffered from severe mental impairments of PTSD, depressive disorder, and adjustment disorder, R. at 17, the ALJ found Plaintiff only moderately limited in his concentration, persistence, and pace, R. at 19. The ALJ limited Plaintiff's RFC to simple, routine, and low-stress tasks, which by itself would fail under a *Mascio*-style challenge. *See Mascio*, 780 F.3d at 638. However, the ALJ in the instant case further limited Plaintiff to "low stress tasks with low stress defined as requiring work with minimal changes in routine and work that allows him to avoid fast-paced tasks such as assembly line jobs involving production quotas." R. at 20; *See Baker*, 2016 U.S. Dist. LEXIS 84460, at *3 (finding that an RFC limiting an individual to non-production type work properly addresses an individual's ability to stay on task). Plaintiff concedes that to limit a plaintiff to both simple routine tasks and non-production-rate pace adequately addresses the ability to understand a task and maintain the pace of the task. ECF No. 10 at 13. Despite this, Plaintiff argues that given the severity of Plaintiff's mental health symptoms, the RFC should have been more severely restricted. *Id.* Plaintiff appears to conflate the finding of severe mental impairments with how those impairments affect the Plaintiff's concentration, persistence, and

pace. R. at 17 (noting Plaintiff has severe impairments of PTSD, depressive disorder and adjustment disorder); R. at 19 (noting Plaintiff's impairments only moderately limit his concentration, pace, and persistence). Because the ALJ provided restrictions consistent with moderate limitations to concentration, persistence, and pace, the RFC does not run afoul of the *Mascio* and is sufficiently limited based on the ALJ's findings.

Additional limitations that account for Plaintiff's ability to stay on task include the RFC's restriction that Plaintiff be "limited to occasional brief and superficial interactions with the public, co-workers, and supervisors" and avoiding "working around crowded conditions." R. at 20; *Hunter v. Berryhill*, No. 3:17cv112, 2018 U.S. Dist. LEXIS 2518, at *38-41 (E.D. Va. Jan. 5, 2018) (finding that the ALJ properly accounted for difficulties with concentration and persistence by limiting the plaintiff to simple routine tasks with no public interaction and only occasional interaction with supervisors and co-workers). The ALJ considered and discussed Plaintiff's mental impairments in arriving at his RFC and ultimate conclusion. The ALJ did discuss Plaintiff's symptoms and determined that the severity of symptoms alleged by Plaintiff were not supported by the evidence of record. R. at 21-23. The fact that the ALJ did not specifically consider every psychological symptom contained in the record is immaterial, and there is no caselaw to support Plaintiff's suggestion that the ALJ need do this. *See* ECF No. 13-14. The fact that the ALJ considered and discuss these impairments and how they relate to concentration, persistence, and pace is sufficient. *Morris v. Berryhill*, No. 3:16cv587, U.S. Dist. LEXIS 150424, at *30 (E.D. Va. Aug. 30, 2017). Therefore, because the ALJ's RFC considered and specifically addressed Plaintiff's mental limitations, determined how those impairments affected the Plaintiff's concentration, persistence, and pace, and provided specific and tailored

limitations in the RFC to account for the same, the undersigned **FINDS** that the RFC satisfies *Mascio*.

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 9, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 11, be **GRANTED**, and the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 20, 2018